IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

COREY HENDERSON,                    *
                                    *
        Petitioner,                 *
                                    *
vs.                                 *   CIVIL ACTION NO. 16-00466-TFM-B
                                    *
MARY COOKS,                         *
                                    *
        Respondent.                 *

<u>REPORT AND RECOMMENDATION</u>

Corey Henderson, a state inmate in the custody of Respondent Mary Cooks,[1] has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Henderson challenges the validity of his 2012 conviction for two counts of murder and one count of attempted murder in the Circuit Court of Mobile County, Alabama.  (Doc. 1 at 2).  This action was referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8 of the Rules Governing Section 2254 Cases.  Following a thorough review of the petition and record, the undersigned finds that an evidentiary hearing is not warranted.[2]

---

[1]  This petition was originally filed against Cynthia Stewart. (Doc. 1).  However, Henderson is housed at the Fountain Correctional Facility, and the current warden is Mary Cooks; thus, the Clerk is directed to correct the case docket so that it lists Cooks as the proper respondent in this case.

[2]  Because Henderson filed his federal habeas petition after April 24, 1996, this case is governed by the Antiterrorism and

Having carefully considered Henderson's petition, Respondent's answer, and Henderson's reply, the undersigned finds that Henderson's petition is due to be denied. Accordingly, it is recommended that Henderson's habeas petition be **DENIED** in its entirety, that judgment be entered in favor of Respondent and against Petitioner, Corey Henderson, and that, should Henderson seek the issuance of a certificate of appealability, his request be denied, along with any request to appeal *in forma pauperis*.

## I.   BACKGROUND AND FACTS.

On September 23, 2011, a grand jury in Mobile County, Alabama, returned an indictment charging Henderson with the murders of Willis and Willie Hampton, in violation of Ala. Code § 13A-6-2(a)(1); and the attempted murder of James Dean, in violation of Ala. Code § 13A-6-2. (Doc. 8-1 at 33, 35, 37). Henderson was convicted of the charges following a jury trial. (Doc. 1 at 2; Doc. 8 at 3; Doc. 8-1 at 18, 24, 30, 34, 36, 38). He was sentenced to three consecutive life sentences. (Doc. 8-1 at 19-20, 25-26, 31-32).

_____

Effective Death Penalty Act ("AEDPA"). The "AEDPA expressly limits the extent to which hearings are permissible, not merely the extent to which they are required." Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1337 (11th Cir. 2004). Henderson has failed to establish that an evidentiary hearing is warranted in this case. Birt v. Montgomery, 725 F.2d 587, 591 (11th Cir. 1984) (en banc) ("The burden is on the petitioner . . . to establish the need for an evidentiary hearing.").

The Alabama Court of Criminal Appeals found the facts of this case to be as follows:[3]

> On the night of January 23, 2011, Willis Hampton, Willie Hampton, James Dean, Jasmine Ayler, and Keiuntea Banks, were in a vehicle "riding around" when they encountered a van. (R. 65). Banks testified that, as they approached the van, he observed "someone hanging out [of] the window with a tech nine" and then shot into the car in which Banks and the four others were riding. (R. 66). The shooting killed Willis and Willie Hampton, and injured James Dean. Banks testified that he recognized the person hanging out of the van from earlier in the day; in addition to identifying Henderson in a photo line-up, Banks made an in-court identification of Henderson. (R. 70, 72). Banks, however, was the only witness who identified Henderson, and Banks's credibility was challenged by Henderson at trial; specifically, the defense challenged varying statements that Banks gave to police regarding the identity of the shooter.

Henderson v. State of Alabama, CR-12-0167 (Ala. Crim. App. June 28, 2013) (Doc. 8-7 at 1-2).

On appeal, Henderson was represented by appellate counsel Glenn L. Davidson, who raised two arguments: (1) that "the trial court erred in allowing the state to elicit testimony that witnesses to crimes occurring in Prichard[, Alabama,] are afraid

---

[3]    The AEDPA directs that a presumption of correctness be afforded to factual findings of state courts, "which may be rebutted only by clear and convincing evidence." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Id. (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)). These facts are recited in the unpublished memorandum opinion of the Alabama Court of Criminal Appeals on Henderson's direct appeal of his trial and conviction. See Henderson v. State of Ala., CR-12-0167 (Ala. Crim. App. 2013).

of retaliation, implying that Henderson had threatened the State's witness[;]" and (2) that "the evidence was insufficient to sustain Henderson's convictions." (Doc. 8-5 at 1, 6).  On June 28, 2013, the Alabama Court of Criminal Appeals issued an unpublished memorandum decision affirming Henderson's conviction.  (Doc. 8-7).  As to Henderson's first argument, the court found that Henderson's trial counsel had actually elicited the testimony regarding fear and retaliation.  (Id. at 6).  With respect to Henderson's second argument, the court reasoned that the issue was not preserved for appeal because, while Henderson made an oral motion for a new trial after the verdict was read, "he did not, as required, claim that the verdict was either contrary to law or to the weight of the evidence.  Furthermore, . . . a written motion is not available in the record, and it is Henderson's responsibility to ensure that such motion is present in the record." (Id. at 9).  Henderson's application for rehearing was overruled on July 19, 2013.  (Doc. 8-9).  His petition for writ of certiorari in the Alabama Supreme Court was denied, and a certificate of judgment was issued on September 13, 2013.  (Doc. 8-11).

On August 22, 2014, Henderson filed a post-conviction Rule 32 petition for relief in the Circuit Court of Mobile County, Alabama.  (Docs. 8-12, 8-13, 8-14, 8-15).  In it, he argued that he was entitled to relief based upon the ineffective assistance of his

trial counsel, Robert "Bucky" Thomas ("Thomas"). (Doc. 8-12 at 92-101). Specifically, Henderson argued that Thomas was ineffective for four reasons: (1) failure to file pretrial motions to suppress Keiuntea Banks' ("Banks") pretrial identification of him (id. at 92); (2) failure to adequately prepare for trial by failing to independently investigate whether Banks was an actual eyewitness to the crime (id. at 96); (3) failure to argue that his attempted murder charge should have been dismissed when the victim, James Dean ("Dean"), failed to appear at trial (id. at 99); and (4) failure to argue that the evidence was insufficient to sustain an attempted murder charge (id.). Henderson also alleged that his appellate counsel rendered ineffective assistance based on his failure to raise, on appeal, the claims regarding his attempted murder charge. Henderson later amended his Rule 32 petition to include a sixth claim, namely that his trial counsel was ineffective for failing to obtain a ballistics expert to contradict the State's theory as to the number of shooters, where the shots were fired from, and the trajectories of the bullets. (Id. at 105-09). On November 24, 2015, after an evidentiary hearing, the Circuit Court of Mobile County, Alabama, dismissed Henderson's Rule 32 petition. (Doc. 8-14 at 8, 11-25). On May 27, 2016, the Alabama Court of Criminal Appeals affirmed the trial court's dismissal of Henderson's Rule 32 petition in an unpublished memorandum opinion. (Doc. 8-17). Henderson subsequently filed an

application for rehearing with the Court of Criminal Appeals and a petition for writ of certiorari with the Alabama Supreme Court, both of which were denied.   (Docs. 8-18, 8-19, 8-20, 8-21).

Henderson timely filed the instant petition for federal habeas relief on August 25, 2016.[4]   (Doc. 1 at 12).   In his federal habeas petition, Henderson raises four of the ineffective assistance of counsel claims that he raised in his Rule 32 petition, namely that trial counsel was ineffective for: (1) failure to file a pretrial motion to suppress the out-of-court identification of him; (2) failure to conduct an independent investigation of the case; (3) failure to adequately argue that his attempted murder charge should be dismissed when Dean failed to appear at trial; and (4) failure to obtain a ballistics expert. (Id. at 6-8, 13-27).   The habeas petition has been fully briefed and is ripe for consideration.   The Court will consider each of Henderson's claims in turn.

**II.   STANDARD OF REVIEW.**

The Court's review of Henderson's petition is governed by the AEDPA.   Under the AEDPA, "the role of the federal courts is

---

[4]   Under the mailbox rule, absent contrary evidence, a prisoner's motion is deemed filed on the date it is delivered to prison officials for mailing.   Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).

strictly limited." <u>Jones v. Walker</u>, 496 F.3d 1216, 1226 (11th Cir. 2007). Specifically, 28 U.S.C. § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.

Thus, a federal court may grant habeas relief only if the state court arrives at a conclusion contrary to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the way the United States Supreme Court did on a set of materially indistinguishable facts. <u>Williams v. Taylor</u>, 529 U.S. 362, 404-05 (2000); <u>Price v. Vincent</u>, 538 U.S. 634, 638 (2003) (noting that a federal court will disturb a state court's habeas decision on the merits only if the petitioner shows that the decision was contrary to, or involved

an unreasonable application of, clearly established constitutional law as determined by the Supreme Court, or if the decision rested upon an unreasonable factual determination).

"[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). In other words, "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied . . . [T]he deference due is heavy and purposely presents a daunting hurdle for a habeas petitioner to clear." Loggins v. Thomas, 654 F.3d 1204, 1220 (11th Cir. 2011); see also Greene v. Fisher, 565 U.S. 34, 38 (2011) (noting that the AEDPA standard is purposely onerous because "federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction") (citations and internal quotation marks omitted); Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (noting that the AEDPA standard "is a difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (citations and internal quotation marks omitted).

Accordingly, in evaluating Henderson's § 2254 petition, the Court takes great care to abide by the stricture that "[a] federal court may not grant habeas relief on a claim a state court has rejected on the merits simply because the state court held a view different from its own." Hill v. Humphrey, 662 F.3d 1335, 1355 (11th Cir. 2011); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1286 (11th Cir. 2012) ("This inquiry is different from determining whether we would decide de novo that the petitioner's claim had merit."). Having established the proper standard of review, the Court turns to Henderson's ineffective assistance of counsel claims.

**III. DISCUSSION.**

As noted supra, Henderson presents four ineffective assistance of counsel claims. The Sixth Amendment guarantees criminal defendants a right to reasonably effective legal assistance. Roe v. Flores-Ortega, 528 U.S. 470, 476 (2000). In Strickland v. Washington, the Supreme Court adopted a two-prong standard for evaluating claims of ineffective assistance of counsel. 466 U.S. 668, 687 (1984). To satisfy the requirements of this two-prong standard, a petitioner must establish (1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of reasonableness, id. at 687-88; and (2) that counsel's

deficient performance prejudiced the petitioner by demonstrating a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. at 694. Because the failure to demonstrate either deficient performance or prejudice is dispositive of the claim, courts applying the Strickland test "are free to dispose of ineffectiveness claims on either of [Strickland's] two grounds." Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998).

In order to satisfy the "performance" prong of the Strickland test, a petitioner is required to show that his attorney's representation "fell below an objective standard of reasonableness[,]" which is measured by "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. That is, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. In considering such a claim, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. Thus, a petitioner has a difficult burden because, to be considered unreasonable, "the performance must be such that 'no competent counsel would have taken the action that [the petitioner's] counsel did take.'" Ball v. United States, 271 F. App'x 880, 883 (11th Cir. 2008) (quoting Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001)).

To satisfy the "prejudice" prong of the Strickland test, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The petitioner "must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'" Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted). Further, it is not enough to merely show that the alleged errors affected the case in some imaginable way. Id. at 1293-94. Thus, "under the exacting rules and presumptions set forth in Strickland, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" Windom v. Sec'y, Dep't of Corr., 578 F.3d 1227, 1248 (11th Cir. 2009) (citations omitted).

### a. **Failure to File a Pretrial Motion to Suppress Out-of-Court Identification.**

Henderson's first claim, that Thomas, his trial counsel, was ineffective for failing to file a pretrial motion to suppress the out-of-court identification of him, is without merit. (See Doc. 1 at 6, 13-16).

Henderson contends that there is a reasonable probability that, had Thomas filed a motion to suppress the out-of-court identification of him, the outcome of his trial would have been different. (Doc. 1 at 15). The circuit court, in summarily dismissing Henderson's Rule 32 petition, concluded that:

> Trial counsel is not required to file a motion to suppress in all cases where there is a pre-trial identification made. See Stanford v. State, 442 So. 2d 167, 169 (Ala. Crim. App. 1983). Counsel must exercise his best professional judgment in deciding whether there are sufficient grounds for filing a motion. See id., quoting United States v. Brown, 663 F.2d 229, 231 (D.C. Cir. 1981). Furthermore, the failure to file a pre-trial motion, such as a motion to suppress, doesn't constitute inadequate representation unless the failure reduces the trial to a "farce, sham, or mockery of justice." See Gray v. State, 455 So 2d 163, citing Bass v. State, 417 So. 2d 582, 585 (Ala. Crim. App.), cert. denied 417 So. 2d 588 (Ala. 1982).
>
> In this case, Trial Counsel testified that he was aware of the discrepancies in the photo line-up and felt that those discrepancies would be more beneficial as brought out during the trial. This was a part of his trial strategy to discredit Banks. Trial counsel is not ineffective when he fails to oppose the State's case at specific points or concedes certain elements in order to focus on others. By making such tactical decisions and choices, defense counsel has not abandoned his client. See Hunt v. State, 940 So. 2d 1041, 1056 (Ala. Crim. App. 2005).

(Doc. 8-14 at 13).

In reviewing Henderson's claim on appeal and affirming the circuit court's dismissal of the claim, the Alabama Court of Criminal Appeals stated:

> In the present case, Henderson failed to prove that counsel's decision not to file a motion to suppress and

> instead to attack the credibility of Banks's testimony
> by pointing out Banks's contradictory statements
> regarding the photographic lineup was not sound trial
> strategy.  Henderson did not establish that a motion to
> suppress would have been likely to have been granted.
> At most, Henderson has shown that the jury chose to
> believe Banks's testimony identifying Henderson as the
> shooter.  Although Henderson argues that "counsel['s]
> strategy backfired," this Court cannot view counsel's
> decision in hindsight but must consider the decision at
> the time it was made.  Counsel's decision to attack the
> credibility of Banks's testimony regarding the lineup
> was reasonable and strategic.

(Doc. 8-17 at 7).

Henderson argues that Thomas had several reasons to file a motion to suppress Banks' out-of-court identification of him. These include: Banks' alleged confession that an investigating police officer coerced him into identifying Henderson as the assailant; an allegedly tainted photo lineup, which made it easier to identify Henderson; Banks' alleged inability to have gotten a full view of the assailant; poor lighting, which would have prevented Banks from properly seeing the assailant; and Banks' testimony that he "ducked down" when the shooting began.  (Doc. 1 at 14-15).  Henderson thus contends that Thomas rendered ineffective assistance of counsel because, had a motion to suppress been filed, "the outcome [of the trial] would have been different." (Id. at 15-16).

Having reviewed the facts of this case, the undersigned cannot conclude that the state courts' rulings on Henderson's claim were "so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fair-minded disagreement." See Harrington, 526 U.S. at 103. The circuit court appropriately noted that, under Alabama law, failing to file a pretrial motion does not constitute ineffective assistance of counsel unless that omission reduces the trial to a mere formality. (Doc. 8-14 at 13). The circuit court determined that Thomas' decision not to file a motion to suppress was mere trial strategy. (Id.). The Alabama Court of Criminal Appeals regarded Henderson's claim as nothing more than evidence that the jury believed Banks over Henderson. (Doc. 8-17 at 7). Neither of these decisions is contrary to clearly established federal law, nor are they unreasonable determinations of fact in light of the evidence presented. This Court will not grant relief on a claim that has been adjudicated on the merits by the state courts unless the decision rendered was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable factual determination in view of the evidence presented. See 28 U.S.C. § 2254(d)(1)-(2). Having reviewed the record in this case, the undersigned determines that the state appellate court's determination regarding counsel's decision not to file a pretrial motion to suppress was reasonable, and Henderson has failed to establish that his counsel was ineffective in violation of the governing standard found in Strickland.

14

"The failure to file a pretrial motion is not *per se* ineffective assistance of counsel." <u>Rogozinski v. United States</u>, 2011 U.S. Dist. LEXIS 78817, at *5, 2011 WL 2893815, at *2 (M.D. Fla. Jul. 20, 2011); <u>see also</u> <u>Collazo v. Sec'y</u>, 2009 U.S. Dist. LEXIS 101806, at *11-13, 2009 WL 3417854, at *4 (M.D. Fla. Oct. 20, 2009) (finding defense attorneys' decision not to move to suppress defendant's statements to be reasonable trial strategy under the circumstances of the case and "well within the realm of reasonable professional competence"). The record shows that Henderson's defense counsel elected not to file the pretrial motion to suppress as part of his trial strategy. Instead, defense counsel chose to cross-examine Banks in order to highlight the inconsistencies in his statements. As noted by the circuit court, this choice was a tactical decision that does not signify that defense counsel abandoned his client. Further, the mere fact that defense counsel's trial strategy did not produce the desired results is not enough to sustain a claim of ineffective assistance of counsel. <u>See</u> <u>Johnson v. Holt</u>, 2007 WL 1697011, at *6 (M.D. Ala. Jun. 11, 2007) ("The failure of the defense strategy alone does not rise to the level of ineffective assistance of counsel."). Therefore, Henderson has not "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy[,]." Thus, he has not met the heavy burden of

showing deficient performance and prejudice with regard to this allegation.  See Strickland, 466 U.S. at 687-89.

Accordingly, the undersigned finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, and that the Alabama courts rendered a decision that was neither contrary to, nor an unreasonable application of, clearly established federal law.  Therefore, Henderson's claim that his constitutional rights were violated by his counsel's failure to file a pretrial motion to suppress the out-of-court identification of him should be denied.

### b. Failure to Conduct an Independent Investigation of the Case.

Henderson's second claim, that Thomas was ineffective for failing to adequately conduct an independent investigation of his case, is also without merit.  (See Doc. 1 at 7, 17-19).

Henderson's argument centers on a newspaper article from September 27, 2011, wherein the chief of the Prichard, Alabama, police force stated, per Henderson's recount, "'Petitioner was wanted after indictments were returned in a triple shooting.  The indictments states [sic] that Petitioner shot into a vehicle containing five people, including two [b]rothers, Willis Hampton 18, Willie Hampton 23, who were fatally wounded.  Another man[,] James Dean 19, was wounded in the shoulder but later recovered.  A

19 year old woman and a 14 year old girl were in the car but were not struck by gunfire, Gardner said.'" (Doc. 1 at 17; Doc. 8-14 at 3). Henderson's argument centers on the alleged presence of a fourteen-year-old girl in the vehicle. He contends that, since the police chief stated that a fourteen-year-old girl was in the vehicle at the time of the crime, Banks, who identified Henderson as the assailant, could not have also been in the vehicle, as only five people were in the car at the time of the crime. (Doc. 1 at 17). According to Henderson, "[i]f the chief's statement prove [sic] to be true, that a 14 year old girl was in the car during the time of the incident, then that would negate Banks' account of what happened, would negate the pretrial identification of Petitioner, would negate the fact that he was [an] occupant in the car, and [must have] perjured himself at trial before the jury." (Id.). Henderson contends that Thomas should have investigated the identity of the fourteen-year-old girl in order to interview her, as she may have offered information that would have exonerated him. (Id. at 17-18).

At the hearing on Henderson's Rule 32 petition, the circuit court noted that Henderson claimed that the newspaper article was newly discovered evidence. (Doc. 8-14 at 13). However, the court dismissed that argument, stating:

> The Petitioner's claim that the newspaper article dated
> September 27, 2011 is newly discovered evidence does not
> meet the requirements of Rule 32.1(e). Petitioner

testified that he had recently found out about the article. Petitioner failed to provide this Court with any information which would confirm and/or verify that the information in the article was, in fact, true. In fact, the testimony during the Hearing was that Detective Dwight King was the lead investigator in the case and that Banks was on the scene at the time police arrived at the time of the incident. Trial Counsel testified that he was not aware of the article and even if he was during the time of trial, it would not have made a difference in his theory of the case, or how he presented the case to the jury.

Ala. R. Crim. P. 32.1(e) has five (5) requirements which must all be met. A petitioner must show: 1) the facts relied upon were not known by the petitioner or his counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of []reasonable diligence; 2) the facts are not merely cumulative to other facts that were known; 3) the facts do not merely amount to impeachment evidence; 4) if the facts had been known at the time of trial or of sentencing, the result probably would have been difference; and 5) the facts establish that the petitioner is innocent of the crime for which he was convicted or should not have received the sentence that he received.

In this case, the Petitioner cannot show that this newspaper article dated September 27, 2011 could not have been discovered at the time of trial, or sentencing, through the exercise of reasonable diligence. The newspaper articles introduced as exhibits were either cut from an actual newspaper, or printed on line, as the State did during the Hearing. Additionally, the newspaper article appears to be, at most, potential impeachment evidence. According to Petitioner, the article shows that Banks was not inside the vehicle. The most this information could be used to do was impeach Banks' testimony and/or discredit. Finally, the fact that Banks may not have been listed in the newspaper article does not establish the Petitioner is innocent. The Trial Counsel said that the article, even if known, would not have changed his theory of defense. The

petitioner therefore cannot meet the requirements of
Rule 32.1(e).

(Id. at 13-14).

In reviewing Henderson's claim on appeal and affirming the
circuit court's dismissal, the Alabama Court of Criminal Appeals
stated:

> Here, Henderson did not show that the newspaper article
> could not have been discovered prior to sentencing or in
> time to file a posttrial motion.  Thus, the claim does
> not meet the definition of newly discovered evidence.
>
> Furthermore, Henderson's argument of ineffective
> assistance in this regard is without merit.  Henderson
> failed to show that the alleged information would have
> changed the outcome of the trial.  Indeed, the fact that
> the article does not mention Banks' name does not mean
> that Banks was not present at the scene.  It appears
> that Henderson conceded that fact when he testified that
> Banks "[c]ould have been" present at the time of the
> shooting.  At most, the information in the article could
> have been used to discredit Banks's testimony
> identifying Henderson as the shooter -- a strategy, as
> noted above, that Henderson's trial counsel in fact
> preserved.  Accordingly, Henderson did not demonstrate
> that he is entitled to relief on this claim.

(Doc. 8-17 at 9).

Having reviewed the facts of this case, the undersigned cannot
conclude that the state courts' rulings on Henderson's claim were
"so lacking in justification that there was an error well
understood and comprehended in existing law beyond any possibility
for fair-minded disagreement."  See Harrington, 526 U.S. at 103.
The record reflects that the trial court found that the newspaper
article was not newly-discovered evidence that would have

warranted the vacating of Henderson's conviction.  Further, the appellate court correctly noted that Henderson failed to establish that Thomas' failure to investigate the information contained in the article amounted to unconstitutional prejudice.  This Court will not grant relief on a claim that has been adjudicated on the merits by the state courts unless the decision rendered was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in view of the evidence presented.  See 28 U.S.C. § 2254(d)(1)-(2).  Thus, having reviewed the record, the undersigned determines that the state appellate court's determination regarding counsel's performance was reasonable, and Henderson has failed to establish that his counsel was ineffective in violation of the governing standard found in Strickland.

"[N]o absolute duty exists to investigate particular facts or a certain line of defense.  Under Strickland, counsel's conducting or not conducting an investigation need only be reasonable to fall within the wide range of competent assistance." Chandler v. United States, 218 F.3d 1305, 1317 (11th Cir. 2000).  Further, "counsel need not always investigate before pursuing or not pursuing a line of defense." Id. at 1318.  Rather, "[i]nherent in this duty to conduct a substantial investigation into any . . . plausible lines of defense is the notion that strategic choices made after less than complete investigation are reasonable precisely to the extent

that reasonable professional judgments support the limitations of investigation." Martinez v. Sec'y, Fla. Dep't of Corr., 684 F. App'x 915, 923 (11th Cir. 2017) (citations and internal quotation marks omitted). Nothing in the record supports the notion that Thomas' failure to investigate/corroborate the statements contained in the newspaper article amounted to constitutionally ineffective assistance. Henderson has not shown, as he must, that "no competent attorney would have failed to pursue the defense, given the facts known to counsel at the time." See id. Additionally, the charge that Thomas failed to conduct an adequate investigation of his case is negated by the record, which establishes that Thomas interviewed and called as a witness Henderson's then-girlfriend, who provided an alibi for Henderson, (Doc. 8-3 at 165-69), and that Thomas also interviewed Banks in jail during the course of his trial preparation. (Id. at 53; Doc. 8-14 at 102). Henderson's conjecture about what could or may have been borne out had Thomas pursued the information contained in the newspaper article is unsupported and unpersuasive.

The undersigned finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, and that the Alabama courts rendered a decision that was neither contrary to, nor an unreasonable application of, clearly established federal law. Therefore, Henderson's claim that his constitutional rights were

violated by his counsel's failure to adequately conduct an independent investigation of his case should be denied.

### c. **Failure to Adequately Argue that the Attempted Murder Charge Should be Dismissed.**

Henderson's third claim, that Thomas was ineffective for failing to adequately argue that his attempted murder charge should have been dismissed, is also without merit. (See Doc. 1 at 8, 20-21).

Henderson rightly notes that Thomas requested a directed verdict on his attempted murder charge. (Doc. 1 at 20). However, he contends that Thomas should have presented a slew of arguments in support of this argument, including:

> 1) Petitioner has a constitutional right to face his accuser; 2) he has a constitutional right to cross examine his accuser all under the Sixth Amendment's confrontation clause and the due process clause of the Federal Constitution; 3) the [sic] never moved to have Dean declared unavailable as a witness by any rule or law; 4) it is the state's responsibility to have its witnesses in court for trial; 5) Dean never testified that Petitioner shot him or that he had been shot; 6) the state did not establish the corpus delicti by any means in the Dean case, such as no medical testimony from doctors, nurses or any person licensed in the medical field that Dean had been shot and what type of treatment he received; and 7) no medical records were submitted to bolster Dean's injuries.

(Id. at 20-21). In affirming the circuit court's dismissal of this claim, the Alabama Court of Criminal Appeals wrote:

> Our review of the record indicates that counsel argued the following at trial:
>
> > "Yes, sir, at this point since the State has concluded their case in chief, I move for a directed verdict as to all three charges, the

two murder charges and the attempted murder
charges based on the only evidence that we
have in front of Your Honor today is the
testimony of an eyewitness who by his own
admission has been telling lies the whole way.
Outside of that, there is really no evidence
tying my client to the murder of these two
young men. As tragic as it is there is no
evidence that would connect my client to these
murders      and     the     attempted    murder.
Furthermore, James Dean, one of the people
listed in the indictment for the attempted
murder has never made presence in the court,
he was not subject to cross-examination and so
I move for that to be dismissed as well."

(R1. 195-96). The circuit court denied the motion. At
the end of all the evidence, the motion was renewed and
denied.

At the evidentiary hearing, trial counsel Robert Thomas
recalled that James Dean was not present at court. Thomas
testified that he made a motion "that [Henderson] ha[d]
a 6th Amendment right under the constitution to confront
and cross-examine his accuser" and that he renewed that
motion at the conclusion of the case. (R. 35).

Here, Henderson's claim is refuted by the record, which,
contrary to Henderson's assertion, indicates that trial
counsel in fact argued in the circuit court that
Henderson was denied his constitutional right to
confront his accuser. Accordingly, Henderson is not
entitled to relief on this claim.

(Doc. 8-17 at 10).

Having reviewed the facts of this case, the undersigned cannot

conclude that the state courts' rulings on Henderson's claim were

"so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility

for fair-minded disagreement." See Harrington, 526 U.S. at 103.

The record clearly reflects that Thomas *twice* requested a directed

verdict on the attempted murder charge.[5]   (Doc. 8-3 at 162-63, 174; Doc. 8-13 at 83-84).   Thomas noted that Dean failed to appear and that Henderson had not had the opportunity to cross-examine him. (Doc. 8-3 at 162-63; Doc. 8-13 at 83-84).   The fact that Thomas did not utilize the exact language that would ostensibly have appeased Henderson is insignificant.   Henderson has not shown, and nothing in the record suggests, that employing a more verbose version of Thomas' motions for a directed verdict would have changed the outcome of the trial, nor has he established that other reasonable attorneys would have opted to use the verbiage he currently champions.   This Court will not grant relief on a claim that has been adjudicated on the merits by the state courts unless the decision rendered was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable factual determination in light of the evidence presented.   See 28 U.S.C. § 2254(d)(1)-(2).   Having reviewed the record in this case, the undersigned determines that the state appellate court's determination regarding counsel's performance was reasonable, and Henderson has failed to establish that his counsel was ineffective in violation of the governing standard found in Strickland.

---

[5]     Indeed, when Thomas made his first request, he asked that a directed verdict be entered for all charges against Henderson. (Doc. 8-3 at 162-63; Doc. 8-13 at 83-84).

Accordingly, the undersigned finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, and that the Alabama courts rendered a decision that was neither contrary to, nor an unreasonable application of, clearly established federal law.  Therefore, Henderson's claim that his constitutional rights were violated by his counsel's failure to adequately argue for the dismissal of his attempted murder charge should be denied.

### d. **Failure to Obtain a Ballistics Expert.**

Henderson's final claim, that Thomas was ineffective for failing to obtain an independent ballistics expert, is meritless. (See Doc. 1 at 8, 23-27).

Henderson contends that "[a]n expert in ballistics would have confirmed that the [.]38 [caliber] bullet recovered from [Willis Hampton's] body was shot from the back seat of the car, not from outside from the front left from the mini van, and nor was it a ricochet." (Id. at 24).  He goes on to argue that "[a] ballistics expert should have been obtained by counsel to explain to the jury why only 8 expended shell casings were found at the scene, but there were more than 15 bullets [sic] holes in the car from the left side, the rear, the right side and inside the car." (Id. at 25).  Henderson also seems to contend that there was evidence of more than one assailant due to the trajectory of the bullets, something a ballistics expert could have confirmed.  (Id. at 26).

In affirming the circuit court's dismissal of this claim, the Alabama Court of Criminal Appeals noted:

> In any event, the record indicates that trial counsel's decision not to obtain a ballistics expert was trial strategy. At the evidentiary hearing, trial counsel Robert Thomas testified that he did not think that a ballistics expert was needed because, he said, the bullets or "slugs" removed from the victims could not be matched to any weapon belonging to Henderson. (R. 31). Thomas also testified that he cross-examined the State's witnesses regarding bullet trajectory. (R. 32). "The selection of witnesses and the introduction of evidence are questions of trial strategy and virtually unchallengeable." Washington v. State, 95 So. 3d 26, 52 (Ala. Crim. App. 2012). Henderson offered no other evidence in support of this claim. Accordingly, Henderson did not demonstrate that he was entitled to relief on this claim, and the circuit court did not abuse its discretion by denying it.[6]

(Doc. 8-17 at 11-12).

Having reviewed the facts of this case, the undersigned cannot conclude that the state courts' rulings on Henderson's claim were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." See Harrington, 526 U.S. at 103.

---

[6]   The Alabama Court of Criminal Appeals also stated that Henderson's claim of ineffective assistance of counsel for failure to request or obtain a ballistics expert was improperly pled under Alabama Rules of Criminal Procedure 32.3 and 32.6(b) because he failed to identify an expert who would have attested to his claims and he failed to show how the expert's testimony would have altered the outcome of the trial. (Doc. 8-17 at 11). However, because the circuit court held an evidentiary hearing, the Court of Criminal Appeals noted that it could not affirm the denial of this claim solely on the basis that it was insufficiently pled. (Id.).

At the evidentiary hearing, Thomas testified that he did not
utilize his own ballistics expert because he could establish,
without expert testimony, that none of the bullets found at the
scene of the crime matched any weapon belonging to Henderson.[7]
(Doc. 8-14 at 89). Thus, trial counsel's decision amounts to trial
strategy which, as noted *supra*, does not constitute ineffective
assistance of counsel simply because the strategy was
unsuccessful. See Johnson, 2007 WL 1697011 at *6. As noted by
the Alabama Court of Criminal Appeals, Henderson has failed to
allege or establish that the outcome of his trial would have been
different but for Thomas' omissions. His ruminations about what
an expert may have testified to are nothing more than unsupported
hypotheses that fail to adequately support his claim of ineffective
assistance of counsel. This Court will not grant relief on a claim
that has been adjudicated on the merits by the state courts unless
the decision rendered was contrary to, or an unreasonable
application of, clearly established federal law, or based on an
unreasonable determination of the facts. See 28 U.S.C. §
2254(d)(1)-(2). Having reviewed the record in this case, the
undersigned determines that the state appellate court's
determination regarding counsel's performance was reasonable, and

---

[7]    Thomas also noted that he felt that a ballistics expert was
unnecessary because the gun used in the commission of the crimes
was not introduced into evidence during the trial. (Doc. 8-14 at
90).

Henderson has failed to establish that his counsel was ineffective in violation of the governing standard found in <u>Strickland</u>.

Accordingly, the undersigned finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, and that the Alabama courts rendered a decision that was neither contrary to, nor an unreasonable application of, clearly established federal law. Therefore, Henderson's claim that his constitutional rights were violated by his counsel's failure to request or obtain a ballistics expert should be denied.

## IV.   CERTIFICATE OF APPEALABILITY.

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing 2254 Cases. The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a habeas petition is dismissed on procedural grounds, without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows, at least, that

jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where a habeas petition is being denied on the merits of the underlying constitutional claims, as in this case, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id.; see also id. at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot[ v. Estelle, 463 U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

In the instant action, Henderson has failed to show that the state courts rendered decisions that were either contrary to, or an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), or that were based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(2). None of Henderson's claims warrant

the issuance of a Certificate of Appealability in this case. For
the reasons discussed above, Henderson has not carried his burden
of establishing ineffective assistance of counsel under the
stringent standard of Strickland. Specifically, Henderson has
failed to show that his trial counsel's decisions were
professionally unreasonable, nor has he shown a reasonable
likelihood that the result of the trial would have been different
had trial counsel filed a motion to suppress the pre-trial
identification of him, conducted an independent investigation of
the case, made each of Henderson's suggested arguments for the
dismissal of the attempted murder charge, or obtained a ballistics
expert.

Under the circumstances, reasonable jurists could not debate
whether any of his claims should be resolved in a different manner
or were adequate to deserve encouragement to proceed further on
the merits. The recommendation that these claims be denied is
based on the straightforward application of clear Circuit
precedent, and no reasonable jurist could differ on the appropriate
disposition of the claims on the record presented. It is thus
recommended that the Court deny any request for a Certificate of
Appealability.

## V.   CONCLUSION.

Based on the foregoing, it is the recommendation of the
undersigned Magistrate Judge that Henderson's petition for habeas

corpus relief be denied, that this action be dismissed, and that judgment be entered in favor of the Respondent, and against the Petitioner, Corey Henderson. It is further recommended that any motion for a Certificate of Appealability or for permission to appeal *in forma pauperis* be denied.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or specify the place in the Magistrate Judge's report and

recommendation where the disputed determination is found.   An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **10th** day of **April, 2019.**

                                             **/s/ SONJA F. BIVINS**
                                  **UNITED STATES MAGISTRATE JUDGE**